IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BRIAN DILLY | ) | Doc.              Page |
| | ) | |
| Plaintiff, | ) | Complaint and Jury Demand |
| | ) | |
| vs. | ) | |
| | ) | |
| PLASTRGLAS, INC. | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Brian Dilly ("Dilly") alleges as follows:

1.   Dilly is a Nebraska resident living at 123 North 35th Avenue, Omaha, Douglas County, Nebraska.

2.   Plastrglas, Inc. is a Nebraska Corporation, ("Plastrglas") with principal office at 4200 North 30th Street, Omaha, Douglas County, Nebraska.  Its registered agent is Mark L. Brasee at 500 Energy Plaza, 409 South 17th Street, Omaha, Nebraska 68102.

3.   This Court has subject matter jurisdiction of this dispute under 42 U.S.C. § 2000e et seq., Title VII of the Civil Rights Act of 1964.

4.   Venue is appropriate in the United States District Court for the District of Nebraska under 28 U. S. C. § 1391(a) as a substantial part of the events giving rise to the claims herein occurred within the judicial district of Nebraska.

5.   Plastrglas hired Dilly as a carpenter from July 1, 2005 through December 31, 2006. At all times relevant, Dilly performed his job in a satisfactory manner.

6.   On or about February of 2006, Dilly informed Plastrglas that he suffered a disability of adult onset diabetes.  The disability of adult onset diabetes has a substantial effect on Dilly's major life activity of eating and diet which is substantially limited and he must adhere to a strict dietary regimen.  At all times relevant, Dilly could perform the essential functions of his job as a carpenter with reasonable accommodations.

7.   Plastrglas refused to provide Dilly the requested reasonable accommodations.

8.   During Dilly's employment with Plastrglas, Plastrglas continually subjected Dilly to workplace harassment consisting of having personal items stolen from him by his colleagues and male co-workers exposing genitals to Dilly, as well as continual assaults of a sexual nature.  The harassment continued for several months.  Dilly

continuously complained to Plastrglas management.  With each complaint, however, the sexual harassments and assaults and thefts would responsively increase.

9.      Throughout August and continuing through December of 2006, Dilly reported to Plastrglas human resources that he was routinely subjected to degrading sexual harassment and humiliation from Plastrglas employees. Plastrglas, however, took no action in response to Dilly's complaint.

10.     Beginning on or about August and continuing through December of 2006, Dilly was subjected to routine retaliatory treatment directly and proximately caused by his reporting harassing treatment to Plastrglas human resources.  Specifically, Plastrglas demoted Dilly from lead carpenter to carpenter and reduced his hours from seventy hours per week to forty hours per week; was subjected to unreasonably dangerous working conditions such as working in the rain with a high amperage arc welding machine; was followed into restrooms by Plastrglas management; Continuously harassed during job performance by Platrglas management; marked as unexcused absence by Plastrglas management unjustifiably; had his wages inappropriately held by Plastrglas; and subjected to continuous harassments and assaults of a humiliating and sexual nature from other male employees with Plastrglas management awareness. Plastrglas, at all times relevant, acted with malice or reckless indifference to Dilly's right not to be subjected to unwelcome, severe and pervasive harassment and retaliation.

11.     On or about October of 2006, Plastrglas also denied Dilly a promotion to plant engineer/maintenance without justification as a direct and proximate result of his reporting harassing treatment to Plastrglas human resources.  Dilly was qualified for the promotion.  Plastrglas, however, promoted a less qualified person for the position and had to terminate the person in approximately one month for performance reasons.

12.     On or about late August or early September of 2006, Dilly filed a complaint to the U.S. Department of Homeland Security (INS Division) regarding undocumented workers at Plastrglas.  On or about December 5, 2006, the U.S. Immigration and Naturalization Service made an on-site investigation at Plastrglas. INS enjoyed the participation of Dilly during its investigation.  Immediately following Plastrglas awareness of the INS enforcement action, Plastrglas subjected Dilly to further

retaliatory treatment including three baseless written reprimands and a two day suspension without pay followed by a one week suspension without pay. All such adverse actions by Plastrglas were baseless and were retaliatory actions.

13. On or about December 24, 2006, Dilly informed Plastrglas that he was forced to quit his employment due to the workplace harassment and retaliatory behavior against him by Plastrglas.

14. On or about March 23, 2007, Dilly filed a charge of discrimination against Plastrglas to the Nebraska Equal Opportunity Commission alleging retaliation, disability discrimination, national origin and whistleblower. On or about October 31, 2008, Dilly filed an amended charge of discrimination against Plastrglas to the NEOC alleging retaliation, sex discrimination, disability discrimination, national origin discrimination, and whistleblower.

15. On or about January 16, 2009 the NEOC reached a determination of reasonable cause regarding harassment, intimidation and constructive discharge.

16. On May 13, 2009, the U.S. Equal Employment Opportunity Commission issued to the Plaintiff a right to sue letter.

### First Cause of Action
### Sexual Harassment

17. The Plaintiff was intentionally subjected to unwelcome harassment.

18. The harassment was based upon the Plaintiff's sex and was of a sexual nature.

19. The harassment was sufficiently severe and pervasive to interfere with the Plaintiff's work performance or create a hostile or offensive working environment.

20. The Defendant either knew or should have known of the harassment; and

21. The Defendant failed to take prompt and appropriate remedial action.

22. As a result of the adverse employment action, the Plaintiff suffered damages amounting to backpay, frontpay and any and all proximately caused damages up to and including punitive damages.

**Second Cause of Action**
**Retaliation**

23.     The Plaintiff filed a complaint to the Immigration and Naturalization Service Division of the United States Department of Homeland Security alleging unlawful employment practices regarding hiring of undocumented workers.

24.     The Defendant reprimanded the Plaintiff, suspended pay of the Plaintiff and allowed pervasive workplace harassment of the Plaintiff.

25.     The Plaintiff's filing of a complaint with the Immigration and Naturalization Service Division of the United States Department of Homeland Security alleging unlawful employment practices regarding hiring of undocumented workers were a motivating factor in the Defendant's decision to demote the Plaintiff; reprimand the Plaintiff, suspend his pay and allow pervasive workplace harassment against the Plaintiff.

26.     As a result of the adverse employment action, the Plaintiff suffered damages amounting to backpay, frontpay and any and all proximately caused damages up to and including punitive damages.

**Third Cause of Action**
**Constructive Discharge**

27.     The Defendant made the Plaintiff's working conditions intolerable; and

28.     Retaliation against the Plaintiff for filing of a complaint with the Immigration and Naturalization Service Division of the United States Department of Homeland Security alleging unlawful employment practices regarding hiring of undocumented workers as well as the Plaintiff's gender was a motivating factor in the Defendant's actions; and

29.     The Defendant acted with the intent of forcing the Plaintiff to quit or the Plaintiff's resignation was a reasonably foreseeable result of the Defendant's actions.

30.     As a result of the constructive discharge, the Plaintiff suffered damages amount to backpay, frontpay, and any and all proximately caused damages up to and including punitive damages.

**Fourth Cause of Action**
**Americans with Disability Act**

31.    The Plaintiff has a disability of adult onset diabetes.

32.    The adult onset diabetes substantially limits the Plaintiff's ability to eat and significantly restricts and regimens his diet.

33.    The Defendant refused reasonable accommodations with respect to the Plaintiff's disability; and

34.    The Plaintiff could have performed the essential functions of his job at the time the Defendant refused reasonable accommodations.

35.    The Defendant knew of the Plaintiff's disability and the Plaintiff's disability was a motivating factor in the Defendant's decision to create an intolerable working condition for the Plaintiff.

36.    As a result of the constructive discharge, the Plaintiff suffered damages amount to backpay, frontpay, and any and all proximately caused damages up to and including punitive damages.

## JURY DEMAND AND DESIGNATION OF OMAHA

37.    Plaintiff respectfully requests a trial by jury on all issues which are entitled to jury trial by law.  Plaintiff designates Omaha, Nebraska as site for jury trial.

Dated this 10th day of August 2009

BRIAN DILLY, Plaintiff

BY:    _____
W. Craig Howell, #20086
Derr and Howell P.C., L.LO.
11205 Wright Circle, Suite 210
Omaha, NE 68144
(402) 933-0070
(402) 933-0707 – Fax
wch@derrhowell.com